UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW THOMAS and HIMANSHU PATEL, on their own behalf and on behalf of all other similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 11 C 4798 |
| v. | ) Judge John W. Darrah |
| UBS AG, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Matthew Thomas, Himanshu Patel, and Mathilde Guetta have filed a First Amended Complaint against Defendant UBS AG ("UBS"), seeking damages for claims arising out of Swiss bank accounts held by United States citizens. Plaintiffs bring claims for Malpractice/Negligence (Count I), Breach of Fiduciary Duty (Count II), Breach of Contract (Count III), Declaratory Relief for Disgorgement of Profits (Count IV), and Fraud (Count V). Before the Court is UBS's Motion to Dismiss Plaintiffs' First Amended Complaint and UBS's Renewed Request for Judicial Notice.

### BACKGROUND

The following facts are taken from Plaintiffs' First Amended Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).[1]

---

[1] As a preliminary issue, the parties have included extensive footnotes in their briefs that fail to comply with Local Rule 5.2. Local Rule 5.2 requires the size of the text in footnotes to be no less than 11 points. In both parties' briefs, the size of the text in the

*Qualified Intermediary Program*

In 2001, the Internal Revenue Service ("IRS") established the Qualified Intermediary ("QI") Program, which was designed to "encourage foreign financial institutions to report and withhold tax on U.S. source income paid to foreign bank accounts." (Am. Compl. ¶ 31.) UBS became a participant in the QI Program. and UBS signed a 65-page "standardized agreement" with the IRS (the "QI Agreement"). (*Id.* ¶ 32.) Under this agreement, UBS was required to have its customers complete IRS Forms W-8BEN or W-9. (*Id.*) For U.S. account holders, UBS agreed to file an annual Form 1099 with the IRS, which reported the client's name and taxpayer identification number and all "reportable payments" made to the U.S. account holder's account. (*Id.* ¶ 33.) For non-U.S. account holders, UBS did not have to file a 1099 Form. (*Id.*)

*UBS and QI Agreement*

UBS "devised an intricate scheme . . . to unlawfully avoid the terms and reporting requirements of the QI Agreement." (*Id.* ¶ 35.) UBS did not disclose to its U.S. clients that it was not complying with the QI Agreement. (*Id.* ¶ 39.) UBS failed to "(a) prepare and deliver to these taxpayers the QI agreed IRS Forms W-9, which would have identified each of them as someone who either needed to pay taxes on offshore assets or (b) withhold 28% of the profits of the accounts of any taxpayer who chose and informed UBS not to 'declare' their Swiss accounts." (*Id.* ¶ 39.)

Accordingly, Plaintiffs' central allegation is as follows:

> Despite the fact that UBS signed a QI Agreement and knew that the accounts in question were owned and/or held by

---

footnotes is clearly less than 11 points. In light of this, both parties have likely exceeded the fifteen-page limit set by Local Rule 7.1, without prior approval of this Court. The parties are ordered to comply with Local Rules 5.2 and 7.1 in all future filings.

> U.S. clients, UBS never filed 1099 Forms, withheld taxes
> or otherwise reported these accounts to the IRS, contending
> that these U.S. client accounts fell outside its QI reporting
> obligations. Moreover, UBS never informed these U.S.
> clients that they [were] required to report the Swiss
> accounts to U.S. tax[] authorities.
>
> In some instances, UBS assisted U.S. clients in selling their
> U.S. securities and reinvesting in other types of assets that
> UBS falsely maintained did not trigger reporting
> obligations. In other instances, UBS suggested and then
> assisted U.S. clients with creating and structuring offshore
> entities by a non-U.S. individual or entity. At no time,
> were these U.S. clients told that they were nonetheless
> required to disclose the UBS Swiss accounts and to pay
> taxes on all income derived therefrom.

(*Id.* ¶¶ 41-42.)

On November 6, 2008, the U.S. Department of Justice ("DOJ") filed an indictment against UBS Chief Executive Officer Raoul Weil for his involvement in UBS's banking activity that did not comply with the QI Agreement. (*See id.* ¶ 40.) A UBS banker involved in the scheme was sentenced to 40 months' imprisonment. (*Id.* ¶ 26.)

### Allegations With Respect to Matthew Thomas

Thomas is a U.S. and, specifically, California citizen. (*Id.* ¶¶ 43, 46.) In 2001, Thomas was working in Israel. (*Id.* ¶ 43.) Thomas traveled to Europe and placed $500,000 of his earnings in a Swiss bank account. (*Id.* ¶¶ 43, 45.) Peter Brummer was assigned as Thomas's account director. (*Id.* ¶ 45.)

In 2003, Thomas moved back to California but continued to have frequent communications with Brummer. (*Id.*) In 2005 and 2006, Brummer traveled to California and met with Thomas. (*Id.* ¶ 46.) In 2008, Thomas saw news reports regarding "the U.S. government's efforts" and asked Brummer whether "he had anything to worry about with

respect to his UBS Swiss Account." (*Id.* ¶ 47.) "Brummer assured him that there was nothing to worry about and no action[sic] to be taken." (*Id.*)

Thomas initially limited his investment to "secure and stable money market investments." (*Id.* ¶ 48.) In 2005, Brummer advised Thomas to expand his investment to include non-U.S. securities: Brummer explained that Thomas could not purchase U.S. securities for "tax reasons." (*Id.*) "Brummer led Thomas to believe that this measure was intended to maintain the UBS Swiss account in compliance with U.S. tax laws." (*Id.*)

In 2009, Thomas first became aware that there was a tax reporting obligation on his Swiss bank account when he became aware of the IRS's announcement of the 2009 Offshore Voluntary Disclosure Program ("OVDP"). (*Id.* ¶ 49.) Thomas elected to participate in the program and had to pay a penalty of twenty percent of the highest aggregate account balance during the period 2002 to 2008. (*Id.*)

*Allegations With Respect to Himanshu Patel*

Patel is a naturalized U.S. citizen and, specifically, Arizona citizen. (*Id.* ¶ 51.) In the late 1980s, Patel moved to Italy to work. (*Id.*) In the mid-1990s, Patel traveled to Switzerland and opened a Swiss bank account with Swiss Banking Corporation. (*Id.*) At some point thereafter, Swiss Banking Corporation merged with UBS and Patel's account was assigned to UBS. (*Id.*) Patel did not pay U.S. taxes on this account while he was working abroad. (*Id.* ¶ 52.) Patel's overseas employment ended in 1997 and he returned to the U.S. (*Id.*)

UBS did not correspond with Patel between 2002 and 2006 and instead asked Patel to travel in person to Switzerland to review account documents or UBS would send

documents to Patel's daughter in Canada. (*Id.* ¶ 53.) In 2008, a UBS agent named Bernasconi asked Patel to travel to Switzerland, which he did. (*Id.*) Bernasconi informed Patel that UBS was closing all international business in that branch: Patel withdrew his funds. (*Id.*)

In 2009, Patel first became aware that there was a tax reporting obligation on his Swiss bank account when he became aware of the IRS's announcement of the 2009 OVDP. (*Id.* ¶ 55.) Patel elected to participate in the program and had to pay a penalty of twenty percent of the highest aggregate account balance during the period 2002 to 2008. (*Id.*)

*Allegations With Respect to Mathilde Guetta*

Guetta is a New York citizen. (*Id.* ¶ 62.) Guetta inherited her Swiss bank account from her late husband in 2000, which had a balance of $1.5 million. (*Id.* ¶¶ 56, 58.) Guetta's husband created the account in the 1950s and, from 1967 through the present, no money or assets were added to the Swiss account, other than UBS's reinvestment of dividends and interest. (*Id.* ¶ 58.)

Guetta traveled to Switzerland with her son in 2000 to check on the account and open a new account. (*Id.* ¶¶ 59, 61.) Between 2000 and 2008, Guetta's son, Vivien, traveled to Switzerland five to six times to check on the Swiss account. (*Id.* ¶ 59.) UBS bankers told Vivien that he could not purchase U.S. securities for the account. (*Id.* ¶ 61.) A UBS banker named David also met with Vivien in New York in 2001 or 2002 regarding the account. (*Id.* ¶ 62.)

UBS bankers "never mentioned anything about the QI Agreement . . . and the tax reporting requirements therein, and never requested a W-9 from the Guettas." (*Id.* ¶ 63.)

5

Guetta "was led to believe" that her Swiss account "was perfectly legal and that she had no legal obligation to disclose the UBS Swiss account due to the restrictions and limitations that UBS placed on the account." (*Id.*)

In 2009, Guetta first became aware that there was a tax reporting obligation on her Swiss bank account when she became aware of the IRS's announcement of the 2009 OVDP. (*Id.* ¶ 64.) Guetta elected to participate in the program and had to pay a penalty of twenty percent of the highest aggregate account balance during the period 2002 to 2008. (*Id.*)

Plaintiffs allege that as a "consequence of UBS's conduct," Plaintiffs sustained losses in the form of "unnecessary, exorbitant, and excessive fees charged by UBS" and "penalties and interest paid to the IRS as a result of not disclosing the UBS Swiss [a]ccounts and additional legal and accounting fees incurred as a result of dealing with the IRS." (*Id.* ¶ 70.) As to Plaintiffs' negligence/malpractice claim (Count I), Plaintiffs allege:

> But for UBS's failure to meet the applicable standard of care, Plaintiffs and the other class members would have disclosed their UBS Swiss Accounts on their U.S. tax returns and paid tax on the income derived from the assets and transactions in the UBS Swiss [a]ccounts [and] would not have been assessed and have paid back-taxes, penalties and interest to the IRS.
>
> UBS's conduct set forth above proximately caused injury and damages to Plaintiffs and the Class Members in that *inter alia* they have been assessed and have paid back-taxes, penalties, and interest to the IRS as a result of their ownership of the UBS Swiss [a]ccounts.

(*Id.* ¶¶ 78-79.) As to Plaintiffs' breach-of-fiduciary duty claim (Count II), Plaintiffs allege that "as a result of UBS's conduct set forth herein, Plaintiffs and the Class Members have suffered injury . . ." (*Id.* ¶ 88.) As to Plaintiffs' breach-of-contract claim,

6

Plaintiffs allege that as a "proximate cause thereof, Plaintiffs and the Class Members have been injured in an actual amount to be proven at trial." (*Id.* ¶ 96.)

*UBS's "Admissions"*

To their Amended Complaint, Plaintiffs attach numerous documents stemming from the government investigation of UBS. (*See id.* ¶¶ 66-69.) These include the DOJ indictment against Weil, a Deferred Prosecution Agreement (the "UBS DPA") between UBS and the U.S. government, a New York Times article quoting UBS executives, a Securities and Exchange Commission complaint filed against UBS, an IRS civil action against UBS, and a transcript of a U.S. Senate Subcommittee hearing. (*Id.*)

Plaintiffs quote extensively from the Birkenfeld indictment, alleging that, based on Birkenfeld's plea agreement and sentencing, Birkenfeld "has admitted to" the charges in the indictment. (*Id.* ¶ 68.) Further, Plaintiffs quote extensively from the UBS DPA, alleging that "UBS has admitted its participation in a fraudulent scheme to facilitate the evasion of U.S. taxes and the requirements of the QI Agreement." (*See* ¶ 69(a)-(i).)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all

reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

With respect to choice of law, there appears to be no dispute that California law applies to Thomas's claims, Arizona law applies to Patel's claims, and New York law applies to Guetta's claims. (*See* Br. at 8, n.5, Resp. at 5, n.6.) These states' laws will be applied accordingly to the Plaintiffs' claims.[2]

---

[2] UBS requests that the Court take judicial notice of, among other items, the 2002 through 2011 versions of Schedule B to I.R.S. Form 1040 ("Schedule B") and its accompanying instructions. Although the Court need not take judicial notice of Schedule B because Plaintiffs otherwise fail to state a claim, UBS argues that a review of Schedule B reveals fatal flaws in Plaintiffs' claims. Line 7a of Schedule B requires taxpayers to answer the following question:

| | | You must complete this part if you (a) had over $1,500 of taxable interest or ordinary dividends; (b) had a foreign account; or (c) received a distribution from, or were a grantor of, or a transferor to, a foreign trust. | Yes | No |
|---|---|---|---|---|
| **Part III Foreign Accounts and Trusts** (See instructions on back.) | 7a | At any time during 2011, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions | | |
| | | If "Yes," are you required to file Form TD F 90-22.1 to report that financial interest or signature authority? See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements | | |
| | b | If you are required to file Form TD F 90-22.1, enter the name of the foreign country where the financial account is located ▶ _____ | | |

8

*Malpractice/Negligence (Count I)*

In Plaintiffs' Malpractice/Negligence count, Plaintiffs alleges that under the QI Agreement, UBS had a duty to "properly administer the tax reporting requirements of such agreement." (Am. Compl. ¶ 74.) Plaintiffs further allege that UBS committed negligence by: (1) failing to "prepare and deliver" Forms W-9 to Plaintiffs that "would have identified each of [the Plaintiffs] as someone who either needed to pay taxes on offshore assets or withhold twenty-eight percent of the profits of the accounts; (2) failing to inform Plaintiffs about the QI Agreement; and (3) failing to inform Plaintiffs that Plaintiffs' "failure to disclose the account to the U.S. government would result in a violation of U.S. law and would subject them to enormous penalties and interest." (*Id.* ¶ 76(a)-(c).) As to their injury, Plaintiffs allege that "but for UBS's failure . . . Plaintiffs would have disclosed their UBS Swiss Accounts on their U.S. tax returns and paid tax[es] . . . [and] would not have been assessed and have paid back-taxes." (*Id.* ¶ 78.)

---

USB then argues as follows. It can be inferred from the Amended Complaint that each of the Plaintiffs falsely answered "No" to Line 7a. This yes-or-no question on Schedule B renders Plaintiffs' negligence and fraud claims implausible. Reasonable or justifiable reliance is an element of negligent omission and fraud actions in New York, California, and Arizona. The simple yes-or-no question of Schedule B makes it inconceivable that Plaintiffs could have misinterpreted this question, regardless of what UBS representatives told or failed to tell Plaintiffs. Plaintiffs' allegations regarding each Plaintiff further support this conclusion. Patel opened an account with another company and UBS acquired his account after a merger in 1997. (Am. Compl. ¶ 51.) Patel, however, does not allege that he correctly answered Line 7a *before* UBS took over his account. Nor does he allege that he correctly answered Line 7a from 1997 to 2001, when UBS entered into the QI Agreement that allegedly gives rise to UBS's duty to inform Plaintiffs of their tax-reporting obligations. Thomas opened his account in 2001 but alleges that in 2008 he asked UBS whether he "had anything to worry about with respect to his UBS Swiss Account." (*Id.* ¶ 47.) Guetta does not allege that she asked UBS about any tax-disclosure requirements. Like Patel, she failed to disclose her account *before* UBS entered into the QI Agreement.

9

Under New York law, "to establish a *prima facie* case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985). "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (applying California law). Under Arizona law, to establish a claim for negligence, a plaintiff must prove four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (citation omitted).

Plaintiffs do not sufficiently allege that UBS had a duty to Plaintiffs. The QI Agreement is between UBS and the IRS. (See ¶ 32 (alleging that UBS signed a 65-page standardized agreement with the IRS.) Consequently, UBS's obligations under the QI Agreement run to the IRS, not the Plaintiffs. Therefore, Plaintiffs' allegation that UBS had a duty *to Plaintiffs* is not plausible. In response, Plaintiffs argue that they are a third-party beneficiary of the QI Agreement. (Resp. at 7.) But Plaintiffs fail to cite to a specific paragraph of their Amended Complaint in which they allege they are a third-party beneficiary of the QI Agreement or any other allegations that would support that theory of recovery.

10

Furthermore, even if Plaintiffs adequately pled that they were third-party beneficiaries of the QI Agreement, Plaintiffs' allegations regarding the nature of UBS's duty are not plausible. The IRS regulations provide that where withholding is required, a QI must "properly *report* such payments to the I.R.S." 26 C.F.R. § 1.441-1(e)(5)(v)(B) (emphasis added). They further provide that a QI "must provide a withholding agent with the Forms W-9, *or* disclose the names, addresses, and taxpayer identification numbers, if known, of [taxpayers]." 26 C.F.R. § 1.441-1(e)(5)(i) (emphasis added).

Consequently, Plaintiffs' allegation that UBS had a duty to "prepare and deliver . . . the QI agreed IRS Forms W-9" to Plaintiffs is contrary to the IRS regulations and the terms of the QI Agreement. (*Id.* ¶ 74.) Plaintiffs also allege that UBS was negligent because it failed to inform Plaintiffs of the tax-reporting requirements of the QI Agreement and that Plaintiffs' failure to disclose the Swiss accounts to the U.S. government would result in a violation of U.S. tax law. (*Id.* ¶ 76(b), (c).) Plaintiffs' Amended Complaint fails to plead, and their response brief fails to explain, why UBS had a duty to disclose this information to Plaintiffs; Plaintiffs' allegation that UBS had *tax-advising* obligations to Plaintiffs requires a leap in reasoning that is unsupported by Plaintiffs' other allegations in their Amended Complaint. Therefore, Plaintiffs' allegations of a breach of duty by UBS fail to rise above a speculative level.

With respect to causation, Plaintiffs allege that "UBS's failure to meet the applicable standard of care" caused them to fail to "disclose their UBS Swiss Accounts on their U.S. tax returns." (*Id.* ¶ 78.) But Plaintiffs fail to allege *how* UBS's alleged negligence *caused* Plaintiffs to fail to disclose their foreign accounts on their U.S. tax returns.

11

For these reasons, UBS's Motion to Dismiss is granted without prejudice as to Plaintiffs' Malpractice/Negligence claim.

*Breach of Fiduciary Duty (Count II)*

In Count II, Plaintiffs allege that, "by entering into the QI Agreement, UBS undertook a fiduciary duty to Plaintiffs . . . with respect to advising them about their duties to report income from their UBS accounts." (*Id.* ¶ 82.) Further, Plaintiffs allege that UBS breached its fiduciary duty by failing to inform Plaintiffs about the tax-reporting requirements of the QI Agreement and failing to inform them that not disclosing their Swiss accounts to the U.S. government would result in a violation of U.S. tax law. (*Id.* ¶ 87.)

To establish a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused thereby. *Roberts v. Lomanto*, 5 Cal. Rptr. 3d 866, 872 (Cal. App. Ct. 2003); *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007) (same); *see Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1052 (D. Ariz. 2010).

Plaintiffs concede that banks do not "typically owe fiduciary duties to depositors" but argue that, here, the relationship was "much more than a typical bank/depositor relationship," rather, that UBS "act[ed] as an investment and tax advisor to them." (Resp. at 9.) This language is drawn directly from the district court's opinion in *Olenicoff v. UBS AG*, No. SACV 08-1029 AG, 2010 WL 8530286, at *1 (C.D. Cal. Mar. 16, 2010) (*Olenicoff*). In *Olenicoff*, the plaintiffs alleged that UBS, among others, "conspired in a 'carefully crafted investment scheme' to defraud [plaintiffs], thousands of other investors, and the United States Treasury Department out of hundreds of millions of dollars in fees,

costs, and taxes." *Id.* Plaintiffs' allegations against UBS hinge on UBS's role in managing plaintiffs' investment portfolio. With respect to plaintiffs' fiduciary duty claim, the court held: "While banks *typically* do not owe fiduciary duties to depositors, there are some situations where a fiduciary duty is owed. Further, Plaintiffs allege that their relationship with UBS AG was not just a typical bank/depositor relationship, but rather that UBS AG acted as an investment advisor." *Id.* at *25 (emphasis in original).

Drawing upon *Olenicoff*, Plaintiffs point to several paragraphs of their Amended Complaint, which they argue supports an investment and tax advisor relationship between Plaintiffs and UBS. (*See* Resp. at 9 (citing ¶¶ 42, 45, 53, 61, 82-83).) Plaintiffs' citations to these allegations are not persuasive. Paragraph 42 consists of a conclusory allegation that "UBS assisted U.S. clients in selling their U.S. securities." Paragraphs 45, 53, and 61 relate specifically to the named Plaintiffs; only the allegations with respect to Thomas could remotely be construed as "investment advice." Plaintiffs allege that in mid-2005, "Brummer suggested additional investments to Thomas and his investments expanded accordingly." (*Id.* ¶ 45.) But the paragraphs with respect to Patel and Guetta do not demonstrate the provision of any investment advice by UBS. (*See id.* ¶¶ 53, 61.) Importantly, it is clear that none of these allegations (or any in Plaintiffs' Amended Complaint) support a fiduciary duty based on a *tax-advisor* relationship.

Further, in order to state a fiduciary duty claim, the breach of the fiduciary relationship must proximately cause damages. Plaintiffs include only the threadbare allegation that based on UBS's omissions, Plaintiffs "suffered injury *inter alia* in that they have been assessed and have paid back-taxes, penalties to the IRS as a result of their ownership of the UBS Swiss Accounts . . . ." (*Id.* ¶ 88.) Therefore, to the extent

13

Plaintiffs allege that UBS had a fiduciary duty based on an investment-advisor relationship to Thomas, they fail to allege how the breach of this duty proximately caused this injury.

For these reasons, UBS's Motion to Dismiss is granted without prejudice as to Plaintiffs' breach-of-fiduciary duty claim.

*Breach of Contract or, in the Alternative, Unjust Enrichment (Count III)*

In Count III, Plaintiffs allege that they entered into "implied, oral and/or written contracts with UBS to provide Plaintiffs . . . with professionally competent tax advice and services and investment advice and services." (*Id.* ¶ 91.) Plaintiffs further allege that they are "third party beneficiaries" of the QI agreement. (*Id.*) With respect to their injury, Plaintiffs allege that "[a]s a result of the Defendant's conduct set forth herein, Plaintiffs . . . have suffered injury in that *inter alia* they have been assessed and have paid back-taxes, penalties to the IRS as a result of their ownership of the UBS Swiss Accounts . . . ."

Inexplicably, Plaintiffs also allege that "these contracts are unenforceable and void due to lack of mutuality and unreasonable and oppressive terms." (*Id.* ¶ 94.) But Plaintiffs further allege that UBS breached the contracts "to the extent that those contracts are enforceable." (*Id.*)

To state a breach-of-contract claim, a plaintiff must allege the existence of a valid and enforceable contract, substantial performance by the plaintiff, a breach by the defendant, and resultant damages. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1368 (Cal. Ct. App. 2010); *McCormick v. Favreau*, 919 N.Y.S.2d 572, 577 (N.Y. App. Div. 2011); *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975).

UBS argues that Plaintiffs' breach-of-contract claim is a formulaic recitation of the elements of a cause of action that does not give UBS fair notice of what the claim is and the grounds upon which it rests. (Br. at 14.) In response, Plaintiffs argue that their Amended Complaint states "very clearly what promises were made by UBS in connection with those contracts, the consideration paid by Plaintiffs, and the nature of the breaches." (Resp. at 13 (citing Am. Compl. ¶¶ 26, 31-33, 35-42, 66, 69, 70, 90-97.) However, a close review of the paragraphs cited by Plaintiffs does not support Plaintiffs' argument.

Plaintiffs claim breach of contract based on "implied, oral and/or written contracts with UBS" and as a third-party beneficiary to the QI Agreement. None of the paragraphs cited by Plaintiffs allege any facts regarding an implied, oral and/or written contract with UBS. Paragraphs 31-33 and 35-42 relate to the QI Agreement. As to this portion of Plaintiffs' breach-of-contract claim, however, Plaintiffs include only a conclusory allegation that Plaintiffs are "third party beneficiaries of such arrangement negotiated by the IRS to protect US citizens." (Am. Compl. ¶ 91.) Under New York law, for example, "[o]ne who seeks to recover as a third-party beneficiary of a contract must establish that a valid and binding contract exists between other parties, that the contract was intended for his or her benefit, and that the benefit was direct rather than incidental." *See Edge Mgmt. Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353, 358 (App. Div. 2006). Here, Plaintiffs' third-party-beneficiary allegations are insufficient to form the basis of a breach-of-contract claim. (Am. Compl. ¶ 91.)

In the alternative, Plaintiffs allege an unjust-enrichment claim. Plaintiffs allege only that, "if no contract (or no enforceable or valid contract) existed between UBS and

15

Plaintiffs . . . then USB has been unjustly enriched by the receipt of all fees, commissions, and premiums paid to UBS by Plaintiffs." (*Id.* ¶ 97.)

Under California law, the California Court of Appeals has recently clarified that "[u]njust enrichment is not a cause of action, just a restitution claim." *Hill v. Roll Int'l Corp.*, 128 Cal.Rptr.3d 109 (Cal. App. Ct. 2011); *see also Fraley v. Facebook*, 11-CV-01726-LHK, 2011 WL 6303898, at *23 (N.D. Cal. Dec. 16, 2011) (holding that "there is no cause of action for unjust enrichment under California law"); *Robinson v. HSBC Bank USA*, 732 F.Supp.2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust-enrichment claim brought in connection with claims of misappropriation and violation of the UCL because unjust enrichment does not exist as a standalone cause of action). Accordingly, Thomas's claim for unjust enrichment is dismissed with prejudice.

"To state a claim for unjust enrichment under New York law, for example, a claimant must plead: (1) one party was enriched; (2) enrichment was at another party's expense; and (3) equity and good conscience require restitution." *Violette v. Armonk Associates, L.P.*, 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995). Under Arizona law, in order to prevail upon a theory of unjust enrichment, a plaintiff must establish that: (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit. *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985).

Plaintiffs' one-sentence allegation regarding their unjust enrichment is insufficient to state a cause of action. Plaintiffs merely state UBS has been enriched but Plaintiffs' Amended Complaint, as pled, does not allege how UBS was enriched and at plaintiff's expense. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Twombly,* 550 U.S. at 555. Accordingly, Patel's and Guetta's unjust-enrichment claims are dismissed without prejudice.

*Fraud and Constructive Fraud (Count V)*

Similar to Plaintiffs' negligence claim, in Count V, Plaintiffs allege that in order to induce Plaintiffs to either open or continue their Swiss accounts, UBS omitted material facts, including: failing to inform Plaintiffs about the tax-reporting requirements of the QI Agreement, failing to "prepare and deliver" Forms W-9, and failing to inform Plaintiffs that failure to disclose the Swiss accounts to the U.S. government would result in violation of U.S. law. (*Id.* ¶¶ 103.)

Under New York law, to state a claim for fraud, a plaintiff must plead sufficient facts concerning: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir. 1997). Under California law, to state a claim for fraud, a plaintiff must plead "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir. 2009). To state a claim for fraud under Arizona law, a plaintiff must plead nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right

17

to rely on it; (9) the hearer's consequent and proximate injury. *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010).

"Under the heightened federal pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff 'alleging fraud . . . must state with particularity the circumstances constituting fraud.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citing *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Plaintiffs' allegations constituting UBS's alleged fraud fails to identify "the who, what, when, where, and how." *Id.* Patel alleges that "UBS entirely ceased U.S. correspondence with [him] between 2002 and 2006." (Am. Compl. ¶ 53.) In 2008, Patel describes a meeting with UBS that did not concern his tax obligations. Patel fails to allege how many times he met with UBS, with whom he met, and what, if anything, a UBS representative said to him.

Thomas alleges that he met with Brummer and subsequently had "discussions with UBS employees," but he fails to allege, with requisite particularity, with whom else he met and *what* Brummer and the other UBS employees said. Thomas alleges only that he "was assured that there was nothing to be concerned about" and "was led to believe that this was perfectly legal." (*Id.* ¶ 48.)

Guetta alleges that "[b]etween 2000 and 2008, Vivien traveled to Geneva on 5 or 6 more occasions" to visit with an "account manager" and other "UBS representatives."

(*Id.* ¶ 59.) Guetta alleges that Vivien met with "a UBS banker named 'David'" but fails to allege *what* this banker told Vivien.[3]

For these reasons, UBS's Motion to Dismiss is granted without prejudice as to Plaintiffs' fraud claim.

*Disgorgement (Count IV)*

In Count IV, Plaintiffs seek a declaration "that the profits earned from such business, which UBS has judicially admitted is $380 million (or in the alternative all fees received by UBS from Plaintiffs or the Class Members), must be disgorged." (*Id.* ¶ 101.) As all of Plaintiffs' claims upon which this claim is based have been dismissed, Plaintiffs' claim for disgorgement is also dismissed without prejudice.

*Injury*

Plaintiffs must plead how they were injured in order to sustain their claims for negligence/malpractice, breach of fiduciary duty, and breach of contract. Plaintiffs' Amended Complaint is nebulous as to *how* Plaintiffs were injured as a result of UBS's alleged conduct. Plaintiffs loosely allege that they "sustained substantial losses" as a "consequence of UBS's conduct" (Am. Compl. ¶ 70) and that they first became aware of their tax obligations upon the IRS's announcement of the 2009 Offshore Voluntary

---

[3] Nor have Plaintiffs plausibly argued justifiable reliance. Plaintiffs cite *Olenicoff* for their reliance argument. But in *Olenicoff*, the court explained that plaintiff's allegations of reliance survived the motion to dismiss as they "deal[t] not only with tax advice, but also with [the plaintiff's investment into the 'pump and dump' corporations." *Olenicoff*, 2010 WL 8530286, at *21. Moreover, the court rejected this same argument on summary judgment, stating: "Even assuming that UBS lied to the U.S. government and withheld QI reporting, that does nothing to help Olenicoff assert justifiable reliance. Such an argument boils down to: because you lied to the U.S. government, the U.S. government did not discover my lie until later, which led me to pay much more money than if my lie had been discovered earlier. Whatever UBS chose to do with its QI reporting, that does not make them responsible for what Olenicoff falsely and knowingly wrote down on line 7a of his tax statements." *Olenicoff v. UBS AG*, No.08-cv-1029, 2012 WL 1192911, at *12 (C.D. Cal. Apr. 10, 2012).

Disclosure Program. (*See id.* ¶ 49.) What is notably missing from their allegations is what gave rise to their tax-reporting obligations in the first place and why UBS is responsible for their failures to know of this obligation before 2009.

## CONCLUSION

For the reasons set forth above, UBS's Motion to Dismiss Plaintiffs' First Amended Complaint [36] is granted in its entirety. Plaintiffs' Amended Complaint is dismissed without prejudice; except, Plaintiffs' unjust enrichment claim under California law in Count III is dismissed with prejudice. UBS's Renewed Request for Judicial Notice [42] is denied. Plaintiffs may file an Amended Complaint within 30 days of the date of this Order if they can do so consistent with this Order and Federal Rule of Civil Procedure 11.

Date: June 21, 2012

JOHN W. DARRAH
United States District Court Judge